# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RUBEN JORDAN, # 196818,

       Petitioner,

v.                                                              Case Number: 07-CV-11775
                                                              Honorable Victoria A. Roberts

MILLICENT WARREN,

       Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING AN APPLICATION FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

## I. INTRODUCTION

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Petitioner Ruben Jordan, a state prisoner incarcerated at the Thumb Correctional Facility in Lapeer, Michigan, filed a "Petition for Writ of Habeas Corpus" on April 24, 2007, asserting that he is in prison in violation of his constitutional rights.

Petitioner was convicted by a jury of first-degree murder, felony firearm, and possession of a firearm by a felon. He was sentenced to life in prison for the murder conviction, two to five years in prison for the felon-in-possession conviction, and a mandatory two-year sentence for the felony-firearm conviction.

In his *pro se* pleadings, Petitioner alleges he is entitled to habeas relief because (i) his statement to the police was the product of coercion, (ii) he was denied the effective assistance of trial counsel when counsel failed to present facts at a *Walker*[1] hearing which supported his

___
[1] A *Walker* hearing is conducted in accordance with *People v. Walker*, 374 Mich. 331; 132 N.W.2d 87 (1965), which requires trial courts, not juries, to determine the voluntariness of

position that he wanted to stop talking to the police, (iii) the trial court failed to properly instruct the jury regarding the proper use of prior inconsistent statements and failed to instruct the jury regarding the lesser offense of involuntary manslaughter, (iv) his trial counsel was ineffective, and (v) his appellate counsel was ineffective for failing to raise the above issues.

For the reasons stated, the Court denies the Petition. The Court also declines to issue Petitioner a Certificate of Appealability and also denies him an Application for Leave to Proceed on Appeal *In Forma Pauperis*.

## II. BACKGROUND

This case arises from a shooting which occurred in Detroit, Michigan, on October 23, 2000, resulting in the death of Danielle Green. Petitioner and co-defendant Andreka Long were charged with Green's murder. They were tried together, but with separate juries.

Detroit Police Officer Lori Briggs was first to testify. She testified regarding the evidence collected at the crime scene. She found suspected blood and several shotgun waddings. She also took photographs.

Marcus Hurd testified next. He said he had known Green for about twenty years and that they had a three-year-old son together. According to Hurd, on the day of the shooting, Green came over to his house and was bruised and bleeding. He asked her what had happened and she told him. They then left the house, and, as they attempted to drive away, a red Ford pulled out in front of them. A woman got out of the car and started coming toward them with a champagne bottle. Words were exchanged and the woman threatened Green. Hurd said he told the woman

---

confessions. At such a hearing, the defendant may take the stand and testify for the limited purpose of providing his version of the facts and circumstances under which the confession was obtained.

2

to leave before someone got hurt. The woman then got back in the car and drove away. The woman was later identified as co-defendant Andreka Long.

According to Hurd's testimony, after that incident, he and Green drove to Petitioner's house. When they arrived, they saw Long standing in the street next to the red Ford and Petitioner standing on his porch. Hurd said they then left.

Hurd drove Green to her house to get some clothes. He said he stayed in the car with their son. According to him, before entering the house, Green stopped and talked to some people who were standing nearby. He said he saw the red Ford drive by slowly, go up to the next corner, and then turn left. Both Petitioner and Long were in the car.

About five to eight minutes after the red Ford made the left turn, Hurd said he heard a loud boom, followed by the side-view mirror of his car shattering. He said he heard shots and then saw Green fall to the ground. He ran over to her, saw that she was injured, and, along with the help of others, put her in his car and drove her to the hospital.

Rose Williams, another friend of Green's, testified that she saw Green being beaten in the street, by a man and a woman whom she could not identify.

Detroit Police Investigator Barbara Simon, the officer in charge of the case, testified regarding her interview with Petitioner and his statement. She testified that the interview took place five days after the shooting. She said she read Petitioner his rights, and he signed and dated the form. Investigator Simon said Petitioner admitted his involvement in the Green shooting. She acknowledged that he was not coerced or threatened into giving her a statement. Petitioner's statement was admitted into evidence.

LaTonya McGhee was the driver of the red Ford. She testified that she entered into an agreement with the prosecution, where she would be allowed to plead guilty to the offense of accessory-after-the-fact in exchange for the dismissal of the first-degree murder charge and for her testimony against Long and Petitioner.

According to McGhee, Petitioner and Long first attacked Green at the party store. She said they then drove back to Petitioner's house. McGhee said she and Long returned to the area of the party store and a second fight occurred between Long and Green. Because several other individuals intervened, nothing physical occurred. McGhee said she and Long returned to Petitioner's house and told him what had happened.

After Petitioner heard what had happened, he went into his house. When he came out, he had a gun. McGhee testified that they then went looking for Green. She said they saw her standing outside her house and talking to some people. McGhee said Petitioner told her to drive over to the next street and stop by a vacant lot. McGhee complied. McGhee further testified that Petitioner then got out of the car and ran through the vacant lot. Shortly after, she said she heard six shots, followed by Petitioner running back to the car. When Petitioner got into the car, he said "I got that ho." (Trial Tr. vol. IV, 51, June 21, 2001). He also told them "this is between us three." (Trial Tr. vol. IV, 52, June 21, 2001). McGhee said they then drove back to his house.

Assistant Wayne County Medical Examiner, Dr. Yung A. Chung, performed the autopsy on Green. Dr. Chung testified that Green suffered a gunshot wound to her right cheek, just below the earlobe, which caused her death. Dr. Chung classified her death as a homicide.

After a six-day trial, the jury convicted Petitioner.

Petitioner filed an Appeal of Right with the Michigan Court of Appeals. In that Appeal, he raised the following two claims: (1) the trial court failed to instruct the jury about the proper use and effect of prior inconsistent statements, and (2) the trial court erred by failing to instruct the jury regarding the lesser offense of involuntary manslaughter. Subsequently, Petitioner filed a *pro se* Supplemental Brief alleging a speedy trial claim. On July 22, 2003, the Michigan Court of Appeals affirmed his convictions and sentences. *People v. Jordan*, No. 237015, 2003 WL 21699895 (Mich.Ct.App. July 22, 2003).

Petitioner filed an Application for Leave to Appeal the Court of Appeals' decision with the Michigan Supreme Court, raising the same claims raised in the Court of Appeals and adding the following: (1) the trial court erred in failing to suppress his statement, (2) cumulative trial errors, and (3) his trial and appellate counsel were ineffective. On February 27, 2004, the Michigan Supreme Court denied Petitioner's Application because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Jordan*, 469 Mich. 1012; 677 N.W.2d 26 (2004).

Subsequently, Petitioner filed a Motion for Relief from Judgment with the trial court, raising the following claims: (1) he was denied an impartial jury, (2) his statement to the police was coerced, (3) trial counsel was ineffective for failing to advise him about his right to an impartial jury and for failing to present critical facts at the *Walker* hearing, (4) appellate counsel was ineffective for failing to raise those issues, and (5) he demonstrated good cause and prejudice so that the trial court could reach the merits of his claims. The trial court denied his Motion. *People v. Jordan*, No. 00-012764-01 (Wayne County Circuit Court, Aug. 15, 2005).

5

Petitioner filed an Application for Leave to Appeal the trial court's decision with the Court of Appeals, raising the following claims: (1) his statement to the police was coerced, (2) trial counsel was ineffective for failing to raise critical facts at the *Walker* hearing, (3) appellate counsel was ineffective, and (4) he demonstrated good cause and actual prejudice so that the court could reach the merits of his claims. The Court of Appeals denied the Application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Jordan*, No. 271711 (Mich.Ct.App. June 26, 2007). Petitioner then filed an Application for Leave to Appeal with the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the Application on the same ground. *People v. Jordan*, 478 Mich. 927; 732 N.W.2d 894 (2007).

Petitioner subsequently filed this Habeas Petition. The Petition was signed on April 19, 2007. Petitioner filed a Motion to Amend the Petition, which the Court granted. The Amended Petition was filed on April 10, 2008, raising the same claims.

### III. DISCUSSION

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state-court decisions. Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an

> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented at the
> State court proceedings.

Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide two bases for relief. Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.*

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts. *Williams*, 529 U.S. at 407-08. Relief is also available under this clause if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not
simply erroneous or incorrect. *Williams*, 529 U.S. at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state court decision is "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent, a federal court may only look to the

holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412.

### B. Claims I, II, IV, and V are procedurally defaulted

In his first habeas claim, Petitioner alleges that his statement to the police was a product of coercion. In his second habeas claim, he alleges that he was denied the effective assistance of trial counsel when counsel failed to present critical facts at the *Walker* hearing which would have supported his position that he wanted to stop talking to the police. In his fourth habeas claim, he alleges that he was denied the effective assistance of trial counsel. And, in his fifth claim, he asserts that appellate counsel was ineffective for failing to raise those claims in his Appeal of Right. Respondent argues that the claims are barred by procedural default. The Court agrees.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005) (the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last explained state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797,

8

(1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner first presented these claims to the state courts in his Motion for Relief from Judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the Motion for Relief from Judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich.Ct.R. 6.508(D) (3). The Michigan Supreme Court's decision, while brief, was based upon an independent and adequate state procedural rule. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000) (Michigan Supreme Court's citation to MCR 6.508(D) to deny relief constitutes a reasoned decision invoking a procedural bar); *see also Guilmette v. Howes*, 591 F.3d 505, 2010 WL 86339, *3 (6th Cir. Jan.12, 2010) (relying on *Munson v. Kapture*, 384 F.3d 310 (6th Cir. 2004), and ruling that habeas petitioner's claim was procedurally defaulted because "although the state trial court on collateral review addressed the merits of [the] claim, both the state appellate and supreme courts denied the claim pursuant to Mich.Ct.R. 6.508(D)"); *Alexander v. Smith*, 311 F.3d 875, 883-84 (6th Cir. 2009) (confirming that *Simpson* is binding precedent); *cf. Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), cert. den. --- U.S. ----, 128 S.Ct. 1897, 170 L.Ed.2d 765 (2008) (ruling that it may be appropriate to look to the state trial court's decision denying a Motion for Relief from Judgment to determine whether the appellate courts relied upon a procedural default in denying relief pursuant to

Mich.Ct.R 6.508(D)). In this case, the Michigan Supreme Court relied upon a state procedural default in denying relief on those claims.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007).

In his fifth habeas claim, Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default. In order to establish ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

10

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client
>
> would disserve the very goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F.Supp.2d 849, 870 (E.D. Mich. 2003).

In this case, Petitioner failed to show that, by omitting the claims presented in his Motion for Relief from Judgment in his direct appeal, appellate counsel's performance fell outside the wide range of professionally competent assistance. With respect to his voluntariness claims, the claims failed after the court made a credibility determination against Petitioner. That finding of fact is entitled to deference. 28 U.S.C. § 2254(e). In any event, appellate counsel was certainly not ineffective for failing to raise an issue that was premised on a factual assertion that had been rejected by the trial court. With respect to Petitioner's fourth claim, it is not even clear that the

11

claim was separately raised in his Motion for Relief from Judgment. Therefore, Petitioner has not shown that appellate counsel's strategy in presenting certain claims in his direct appeal and not raising the claims contained in the Motion for Relief from Judgment was deficient or unreasonable. He thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

A federal court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court notes that Petitioner cannot establish prejudice; his claims lack merit for the reasons stated by the state trial court in denying his Motion for Relief from Judgment.

Finally, Petitioner has not established that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner made no such showing. These claims are barred by procedural default and do not warrant habeas relief.

### C. Claim III--Jury instruction claims are also procedurally defaulted

In his third habeas claim, Petitioner asserts two instructional errors. First, he says the

trial court did not correctly instruct the jury on the limited use of prior inconsistent statement evidence. Second, he argues that a lesser-included offense instruction of involuntary manslaughter should have been given. There was no objection from defense counsel as to either alleged error. As a result, the Michigan Court of Appeals found that the issue was not properly preserved at trial and reviewed the issue only for plain error, stating:

> Because defendant failed to object to the jury instructions on this basis, this issue is unpreserved. Unpreserved allegations of error concerning jury instructions are reviewed for plain error affecting defendant's substantial rights, i.e., the error must be outcome-determinative. Further, reversal is warranted only when plain error results in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.
>
> Jury instructions are reviewed in their entirety to determine if error requiring reversal exits. "Even if the instructions are imperfect, there is no error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights."
>
> Having reviewed the jury instructions in the present case in their entirety, we conclude that defendant failed to demonstrate outcome-determinative plain error. The instruction concerning prior inconsistent statements that the trial court gave concerning Hurd's testimony arguably should have been given in regard to McGhee's testimony where her testimony revealed that she lied to the police on three occasions. However, there is no indication that the instructions as a whole did not fairly present the issues to be tried or sufficiently protect defendant's rights. The trial court instructed the jury regarding the credibility of witnesses. The trial court also instructed the jury regarding McGhee's status as an accomplice, and cautioned the jury about accepting accomplice testimony: "You should examine an accomplice's testimony closely. Be very careful about accepting it." Further, there was strong evidence of defendant's guilt, including his own statement to the police. Defendant has failed to demonstrate outcome-determinative plain error, and thus reversal is not warranted.
>
> Next, defendant argues that the trial court erred in failing to instruct the jury on involuntary manslaughter. Defendant is entitled to no relief because even if the failure to instruct on manslaughter were error, it was harmless because the jury convicted defendant of first-degree murder despite having been given the option to convict him of second-degree murder. "Where the trial court instructs on a lesser included offense which is intermediate between the greater offense and

13

> a second lesser included offense, for which instructions were requested by the
> defendant and refused by the trial court, and the jury convicts on the greater
> offense, the failure to instruct on that requested lesser included offense is
> harmless if the jury's verdict reflects an unwillingness to have convicted on the
> offense for which instructions were not given."

*Jordan*, 2003 WL 21699895, at *1-2 (citations and footnote omitted).

The Court of Appeals reviewed Petitioner's claim under a plain-error standard of review based on his failure to raise a contemporaneous objection. Michigan's contemporaneous objection rule constitutes an independent and adequate state ground sufficient to bar habeas review. *Simpson*, 238 F.3d at 409. The Sixth Circuit has repeatedly held that plain-error review by a state appellate court constitutes the enforcement of a procedural default. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("[W]e view a state appellate court's review for plain error as the enforcement of a procedural default."); *see also Gulertkin v. Tinnelman-Cooper*, 340 F.3d 415, 422-23 (6th Cir. 2003) (same); *Grayer v. McKee*, 149 Fed.App'x 435, 441 (6th Cir. 2005). Thus, the Court of Appeals' review of Petitioner's claim on the merits under a plain error standard does not constitute a waiver of the procedural default. The claims may only be reviewed by this Court if Petitioner demonstrates cause and prejudice. *Tinnelman-Cooper*, 340 F.3d at 422-23. The only candidate for cause would be Petitioner's allegation that trial counsel was ineffective for failing to object to the alleged errors.

With respect to the prior inconsistent statement instruction, the trial court did give such an instruction with respect to witness Hurd. It did instruct the jury on the credibility of witnesses, and it did also instruct the jury to view McGhee's testimony cautiously given her status as an accomplice. However, even if the instructions were less than perfect, that was not an issue that would have been meritorious if properly preserved. Generally, claims of alleged

14

erroneous jury instructions are not cognizable in federal habeas review unless the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

The failure to give a manslaughter instruction claim would also not have provided a basis for relief even if properly preserved. In *Bagby v. Sowders*, 894 F.2d 792, 797 (1990), the Sixth Circuit held that the failure to instruct on lesser included offenses in non-capital cases is not a defect of such character or magnitude to independently implicate the Due Process Clause. The Sixth Circuit held that such a claim is not cognizable in federal habeas corpus proceedings.

Because Petitioner failed to demonstrate either cause or actual prejudice to excuse his default, and, because he has not shown that a fundamental miscarriage of justice would result if review of the claim on the merits was barred, the Court finds these claims procedurally barred by virtue of Petitioner's failure to comply with Michigan's contemporaneous objection rule.

## IV. CONCLUSION

The Court **DENIES WITH PREJUDICE** Petitioner's "Petitioner for Writ of Habeas Corpus" [dkt. # 1].

Before Petitioner may appeal this decision, a Certificate of Appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a Certificate of Appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court

15

was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

The Court concludes that reasonable jurists could not debate whether the Court was correct in its procedural rulings. Accordingly, the Court **DECLINES** to issue Petitioner a Certificate of Appealability. The Court also **DENIES** Petitioner an Application for Leave to Proceed on Appeal *In Forma Pauperis*, as any appeal would be frivolous. *See* Fed. R.App. P. 24(a).

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: July 20, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record and Ruben Jordan by electronic means or U.S. Mail on July 20, 2010.

s/Linda Vertriest
Deputy Clerk